PASCHKE and wife, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 11—May 9, 1933.*

For the appellants there was a brief by *Randall, Cavanagh, Stephenson & Mittelstaed* of Kenosha, attorneys, and *H. G. Haight* of Neillsville of counsel, and oral argument by *Roy S. Stephenson.*

The *Attorney General* and *Mortimer Levitan,* assistant attorney general, for the respondent Industrial Commission.

FRITZ, J. Plaintiffs, who are husband and wife, commenced this action to set aside an award made by the Industrial Commission for the payment of compensation by plaintiffs to the defendant Henry I. Backen because of injuries and disability sustained by him on September 11, 1930. The award was based on the commission's finding that, at the time of his injury, Backen was an employee of Gust Paschke and Edith Paschke, who were engaged in the joint venture of silo filling. The circuit court confirmed that award, and plaintiffs appealed.

On this appeal the sole contention of plaintiffs is that the judgment should be reversed, and the award vacated as to Edith Paschke, on the ground that there is no evidence to support the finding that Backen was an employee of Edith Paschke; or of Gust Paschke and Edith Paschke jointly; or that Edith Paschke was engaged with Gust Paschke in the joint venture of silo filling.

A review of the record discloses that the plaintiffs' contention is sound. There is no material conflict in the evidence, and no impeachment of the testimony of the plaintiffs. Backen was injured while working at a silo filler on the farm of Charles Maki, who had contracted with Gust Paschke for the use of the filler, which was to be operated by labor and power supplied by the latter. Backen testified that Gust Paschke hired him to go to work, and that he had no conversation and no dealings with Edith Paschke regarding this silo filling. The plaintiffs testified, without contradiction, that the silo filler, at which Backen was injured, had been acquired by Gust Paschke, in exchange for another filler, which he owned, and his promissory notes, which he paid. To provide the power required to operate the filler Gust Paschke used a tractor owned by Edith Paschke. For such use she charged Gust Paschke six dollars per day, under an agreement between them. She and Gust Paschke resided on a farm, which she had acquired in her own name, with proceeds derived from her separate estate, and which she operated as her own and for her own benefit. All personal property on her farm, excepting the silo filler and an automobile, belonged to her. In a deed to her executed by Gust Paschke (to correct an error in a deed by which her vendor had conveyed the farm to her and her husband, and which she had refused to accept), there was a provision that "all personal property then on the farm or such as may thereafter be obtained should be the property of the wife." However, neither ever considered that provision applicable to the silo filler, which was acquired by Gust Paschke after he executed that deed, and she never received any money for silo filling.

For Gust Paschke's services on the farm he was credited by her with fifteen dollars per month, and his expenses. They kept no books of account or other written record of

their transactions, excepting bank checks and the stubs. She had a checking account at a bank. He formerly had an account of his own at another bank which failed, and thereafter he never kept any of his money in a bank. To checks issued on her account for her obligations, or benefit, her name was signed either by her or her husband, and to checks issued in discharge of his obligations either she or her husband signed his name, so that she would know how to figure her account with him. They always kept track of their transactions by the check stubs and settled up every month. He never deposited his money in her bank account unless she had paid out more for him than she owed him, and then the deposit was for her use.

The uncontradicted and unimpeached testimony, which established the foregoing facts and circumstances, admitted of no other findings of fact than that Edith Paschke owned and operated the farm for her sole and exclusive use; that she did not own the silo filler and was not, individually or in conjunction with Gust Paschke, engaged or interested in the venture of silo filling; and that Backen was not an employee of Edith Paschke individually, or of Edith Paschke and Gust Paschke jointly.

It is true that there was no tangible evidence by way of books, papers, or documents to corroborate the positive testimony of the plaintiffs as to the conduct of the farm by Edith Paschke, and of the silo filling by Gust Paschke, as separate businesses. But it is also true that there is no book, paper, or document, and there is not otherwise, any physical fact, which is in such conflict with that testimony as to render it improbable or unbelievable, and, therefore, subject to complete rejection. No such drastic consequences are warranted by the undisputed circumstances that Edith Paschke made a payment of taxes, which were levied on the personal property on the farm, as part of which—in the absence of

any proof as to what articles were listed in the property assessed—the silo filler may or may not have been included; and that she and her husband had executed a chattel mortgage, in which there was listed a silo filler. As to the tax payment, it does not appear that either she or her husband had any knowledge as to what articles were, in fact, included in the personal property assessed, and it is so very unusual for a taxpayer, circumstanced as she was, to ascertain what articles have actually been listed for assessment, that it would be unreasonable to presume that she had any knowledge that her husband's silo filler was included in the property assessed as hers. As regards the mortgage, when she was testifying in relation thereto, she offered to explain how it came to be that way, but Backen's counsel declined her offer. Manifestly, if her husband owned the silo filler, that amply accounts for including it in a mortgage, which he joined in executing. Likewise, her joining therein was proper, as well as necessary, because of the inclusion therein of the other property, of which she was the owner. As to neither her, nor her husband, does it follow that by reason of their joining in the one mortgage, both were in fact interested in every article described therein. Those equivocal circumstances, that she paid taxes on property, in which the silo filler may have been included, or that she joined her husband in executing the mortgage, in which the silo filler was listed with other articles which belonged to her, afford no reasonable basis for rejecting the positive, uncontradicted, and unimpeached testimony that she did not own any interest in the silo filler. Furthermore, even if she had owned some interest in the silo filler, that alone, in view of the other facts and circumstances established by the evidence in this case, would still not warrant finding that she engaged with her husband in the joint venture of silo filling.

In arriving at the conclusions stated above, we are not unmindful of the established rule that, if there is any credible

evidence to support a finding of the commission, it cannot be disregarded by the court even though the finding is against the great weight or preponderance of the evidence. *Tesch v. Industrial Comm.* 200 Wis. 616, 619, 229 N. W. 194; *Gerue v. Industrial Comm.* 205 Wis. 68, 236 N. W. 528; *Winter v. Industrial Comm.* 205 Wis. 246, 249, 237 N. W. 106. In this case, the findings are without adequate support in the evidence because "it will not do to reach a conclusion in favor of the party on whom the burden of proof rests, by merely theorizing and conjecturing. . . . A finding of fact made by the commission cannot be based upon mere conjecture any more than a finding of fact by a court or jury. While it is within the province of the commission to draw inferences, they must be drawn from established facts which logically support them. If not so supported, the findings of the commission based on its inferences are mere conjecture, in excess of its powers, and the action of the commission must be reversed." *Creamery Package Mfg. Co. v. Industrial Comm., ante,* p. 326, 248 N. W. 140.

*By the Court.*—Judgment reversed as to Edith Paschke, and cause remanded with directions to enter judgment vacating the award of the Industrial Commission as to her, and confirming the award as to August Paschke.