REDMAN, Respondent, vs. HOBART, Appellant.

*March 13—April 12, 1946.*

For the appellant there was a brief by *Benton, Bosser, Becker & Parnell* of Appleton, and oral argument by *A. W. Parnell.*

For the respondent there was a brief by *Eberlein & Eberlein* of Shawano, and oral argument by *M. G. Eberlein* and *M. G. Eberlein, Jr.*

FOWLER, J.   The action is brought to recover for injuries sustained in feeding a machine in use for shredding and husking corn.   The plaintiff was employed as a farm hand by the year by the defendant who owned and was operating a farm. At the time of the injury a shredder was being operated on a neighboring farm.   The owners of the farms pursuant to custom exchanged work, and the plaintiff pursuant to directions of the defendant was sent to the neighbors to repay work done for the defendant by an employee of the neighbor the day previous.   The plaintiff on reaching the neighboring farm was directed by the neighbor to feed the shredder, and plaintiff without objection acquiesced in doing the work requested, and while the shredder was in operation his hand was drawn into the rollers and so mangled as to require amputation above the elbow.

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.   The court overruled the demurrer, and the defendant appeals.

The grounds of recovery are laid in two separate causes of action. The first is based on secs. 167.12 and 167.13, Stats., and alleges that the machine was not equipped with safety devices as required by sec. 167.12, and no competent person was solely in charge to oversee and attend the operation of the shredder as required by sec. 167.13. The second cause of action charges violation of the safe-place statute, sec. 101.06. The basic allegation in this cause of action is "That the said place of employment was not safe and the methods and processes used were not safe and the employment was not safe" as required by the section. Secs. 167.12 and 167.13 are here set out in the margin.[1]

As to sec. 167.13, Stats., it is obvious that the case does not fall within that section because of absence of allegation in the complaint that the shredder was purchased prior to 1909.

[1] Sec. 167.12 *Safety appliances.* Any person, firm, or corporation who shall sell, offer or expose for sale, or use any machine to be operated by steam, or other power, for the purpose of husking or shredding corn or corn stalks shall provide such machine with safety or automatic feeding devices for the protection from accident by the snapping rollers, husking rollers, and shredding knives of any person using or operating such machine in the discharge of their duty, and such machine shall be so guarded that the person feeding said machine shall be compelled to stand at a safe distance from the snapping rollers; and any person, firm, or corporation operating such machine shall maintain thereon such safety or automatic feeding devices. The duty to equip such machine with safety or automatic feeding devices, as well as the duty to maintain the same, shall be absolute; and the exercise of ordinary care on the part of such person, firm, or corporation operating such machine shall not be deemed a compliance with such duty; and in case any person in the employ of such person, firm, or corporation operating such machine continues in such employment when such device has not been installed and maintained, as above provided, such employee shall not be deemed guilty of a want of ordinary care, on account of so continuing in such employment.

Sec. 167.13 *Operation.* No person, firm or corporation shall use, operate or permit to be used or operated any such machine purchased prior to June 12, 1909, unless during all the time such machine shall be used and operated it shall be in charge of a competent person whose sole duty shall be to oversee and attend to the operation and use of the same; nor use, operate or permit to be used or operated any such machine whatever while the safety devices or guards are detached.

As to sec. 167.12, Stats., it is obvious that whether the case falls within that section depends on whether the defendant was using or operating the machine when the injury occurred. It seems to us that a mere reading of the statute discloses that not the defendant but the neighboring farmer is the one who was using it and operating it, and that this absolves the defendant from liability. The case of *Dugenske v. Wyse*, 194 Wis. 159, 215 N. W. 829, is cited in support of the complaint, but the defendants in that case were using a silo filler on which the plaintiff was injured on their own farm.

The plaintiff contends that the cases decided by this court under the Workmen's Compensation Act rule the case in favor of the plaintiff. Whatever effect these decisions have goes to the status of the plaintiff as an employee of the defendant. The plaintiff refers particularly to *Powell v. Industrial Comm.* 193 Wis. 38, 213 N. W. 651, in this respect. The determining fact in that and the other industrial commission cases was whether the injured person was an employee of the defendant. That is the fact that controlled liability under the Workmen's Compensation Act. In the *Powell Case, supra,* the man was an employee of one farmer and was injured while feeding a wood-sawing machine on the farm of a neighboring farmer where he was sent by the farmer by whom he was employed to help a neighboring farmer pursuant to an agreement between the two farmers for exchange of work, but there the similarity of the two cases ends. Whether the saw was equipped with proper safety devices was entirely immaterial, as secs. 167.12 and 167.13, Stats., were not involved.

As to the second cause of action the complaint incorporates the allegations of the first cause of action from which it appears that defendant owned a farm and that the plaintiff was engaged by contract to work by the year for the defendant; that defendant directed the plaintiff to go to a neighboring farmer to work with the understanding that his work would be paid for by exchange of labor furnished by the neighbor; that the

neighboring farmer was using a corn shredder on his farm in shredding and husking corn; that the plaintiff was directed by the neighbor to feed the machine and was injured by his hand and arm being drawn into the rollers; and that the machine was not guarded by safety guards as required by the statutes of the state. The complaint in the second cause of action alleges further that the shredder was operated by a tractor; that the defendant was bound to furnish to plaintiff employment that was safe, and to use safeguards and adopt methods reasonably adequate to render plaintiff's place of employment safe; that the plaintiff's place of employment was not safe and the method adopted for shredding and husking corn were not such as to make it safe; and that by reason thereof the plaintiff sustained his injury.

The material provisions of the safe-place statute are here set out in margin.[1]

---

[1] Sec. 101.01 *Definitions of terms used.* The following terms as used in sections 101.01 to 101.29 of the statutes, shall be construed as follows:

(1) The phrase "place of employment" shall mean and include every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, but shall not include any place where persons are employed in (a) private domestic service which does not involve the use of mechanical power or (b) farm labor when the employer is the farmer operating the farm and the labor is such as is customarily performed as a part of farming, and including the transportation of farm products immediately and directly from the farm, and of materials, supplies or equipment directly to the farm for use thereon.

(2) The term "employment" shall mean and include any trade, occupation or process of manufacture, or any method of carrying on such trade, occupation or process of manufacture in which any person may be engaged, except in such private domestic service as does not involve the use of mechanical power and in farm labor as used in subsection (1).

Sec. 101.06 *Employer's duty to furnish safe employment and place.* Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall

The plaintiff in his complaint ignores the provision of par. (b) of sec. 101.01 (1), Stats., exempting from the statute "farm labor when the employer is the farmer operating the farm and the labor is such as is customarily performed as a part of farming," and the provision of sub. (2) of sec. 101.01 taking out from under the statute one engaged "in farm labor." The first question we will decide is whether the plaintiff is precluded from recovery under these excluding provisions, as, if he is, the plaintiff cannot recover.

As matter of common knowledge, operating a shredder for the purpose of shredding and husking corn is farm labor. If not our decisions in *Powell v. Industrial Comm., supra, Nace v. Industrial Comm.* 217 Wis. 267, 258 N. W. 781, and *Schuster v. Bridgeman,* 225 Wis. 547, 275 N. W. 440, make it so. Par. (b) of sec. 101.01 (1), Stats., takes out from under the statute one engaged in "farm labor when the employer is the farmer operating the farm and the labor is such as is customarily performed as a part of farming." This precludes the plaintiff from recovery unless merely because the defendant was *not* operating the farm where the injury occurred. But this construction of the statute would be contrary to the decision in the case of *Schuster v. Bridgeman, supra.* In that case recovery was sought under the safe-place statute from the owner and operator of a silo filler by a person injured by being drawn in by the rollers of the cutter while it was in operation. The injured person was not an employee of the defendant, but that is immaterial as the safe-place statute applies to frequenters as well as employees and the plaintiff was at least a frequenter, as he was engaged in drawing bundles of corn from the field and unloading them onto the silo cutter.

be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. . . .

The defendant owned the silo filler and was operating it by mechanical power furnished by a tractor. He was "a farmer" operating the filler on a farm not operated by him. The work was being done by neighboring farmers pursuant to their custom of exchanging labor for the operation of the outfit. If the fact that the defendant in that case, altho a farmer not operating the farm, was exonerated from liability, so should the defendant here be.

Plaintiff's counsel, as stated before, insists that the *Powell Case, supra,* rules this one. If so, it rules it against the plaintiff as Powell was exonerated from liability by this court, because the labor being performed when the injury was sustained was farm labor. For the same reason the defendant here is exonerated. Had the *Powell Case* been decided in favor of the injured man, there would be ground for contending that this case should be decided in favor of the plaintiff, but being decided against the injured man, it affords no ground for the contention. The *Powell Case* was founded on the Workmen's Compensation Act, ch. 102, Stats., while the instant one is based on the safe-place statute, ch. 101, but in both one engaged in farm labor is not within the statute. As being engaged in farm labor took the injured man out of the statute in the *Powell Case,* so must it take out the plaintiff here.

Plaintiff cites *Albert Miller & Co. v. Wilkins* (7th Cir.), 209 Fed. 582, to the proposition that a master is bound to provide safe instrumentalities for his servants while at work, and that he is so bound when they are at work on the premises of a vendee from whom the master has purchased goods to remove the goods, and he is responsible for injuries to a servant injured by a defective hoist of the vendee. Passing the point that in the removal of the goods the servant was doing work that was being done directly for the master, the case was a common-law action grounded on negligence. The instant action is not such, but is based wholly on a statute, and the terms of the statute control its disposition.

The *Dugenske Case, supra,* is relied on by plaintiff in support of his second cause of action as well as the first. But when that case was decided in 1927, sec. 101.01, Stats., did not include par. (b) of sub. (1); nor did sec. 101.06 exclude one engaged in farm labor from its operation. See Stats. 1927.

The plaintiff contends that the complaint alleges the defendant was not a farmer operating a farm and that therefore par. (b) and sub. (2) of sec. 101.01, Stats., do not apply. This claim is based on the allegation that "The farm [owned by defendant] was not operated by the above-named defendant but by this plaintiff, her servant and employee." This we think is a legal conclusion contrary to the plain implication from the allegations of fact made in the complaint. The allegations of the first cause of action are made a part of the second cause of action. From them it appears that the defendant is the owner of a large farm; that plaintiff worked for her by the year under a written contract; that the defendant directed the plaintiff to exchange labor with neighboring farmers; that the defendant directed the plaintiff to go to a neighboring farm as payment for work done by the neighbor the day before on defendant's farm. From these allegations of fact we think it plain that the defendant, not the plaintiff, is the "operator" of the defendant's farm. Otherwise a person, man or woman, incapacitated for doing physical work, could not be a farmer, and would not be entitled to the benefit of the farm-labor provisions of the statutes. We cannot attribute to the legislature such an intention.

Other matters are discussed in the briefs, but we need not mention them as the above rules the case in favor of the appellant.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded with direction to enter an order sustaining the demurrer.

RECTOR, J., took no part.